**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**


**CARL C. BENNETT,**

      **Petitioner,**

**vs.**

                                 **CASE NO. 4:05cv96-WS/WCS**

**JAMES McDONOUGH,[1]**

      **Respondent.**

_____/


## REPORT AND RECOMMENDATION

This is a petition for writ of habeas corpus filed by Carl C. Bennett pursuant to 28 U.S.C. § 2254.  Doc. 1.  Petitioner limits his petition to a challenge to his convictions for forgery (10 counts) and uttering a forged instrument (10 counts) in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, case number 2003-2606. Respondent filed an answer, doc. 11-1 and the state record, docs. 11-2 to 11-4. Respondent concedes that the petition was timely filed, that state court remedies were

_____

[1] James McDonough succeeded James Crosby as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  Fed.R.Civ.P. 25(d).

exhausted, and addresses the merits of the claims.  Doc. 11-1, p. 3.  Petitioner filed a

traverse, doc. 14.

**Procedural History**

Petitioner entered nolo contendere pleas in several cases involving passing bad

checks.  The case numbers were 2003-2606, 2003-3166, 2003-3453, and 2003-3454.

He was sentenced to concurrent terms of 27 months in prison to be followed by

probation to provide time to make restitution.  A direct appeal, filed only in case number

2003-3166, was dismissed for failure to comply with a court order.  Doc. 11-2, p. 41.

Petitioner filed a Rule 3.850 motion raising the claims raised here and that motion was

denied.  He appealed the denial of relief without success.

**Section 2254 Standard of Review**

For claims which were properly exhausted and adjudicated in state court, this

court's review is limited.  "[A] determination of a factual issue made by a State court

shall be presumed to be correct," and Petitioner has "the burden of rebutting the

presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1);

Bui v. Haley, 321 F.3d 1304, 1322 (11th Cir. 2003) (citing the statute, footnote omitted).

Moreover, as to a factual issue adjudicated by the state court, Petitioner must show that

the adjudication "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court

proceeding."  § 2254(d)(2); 321 F.3d at 1322 (citing the statute).  Section 2254(d)(2) is

satisfied "only if it is shown by clear and convincing evidence that the state court's

presumptively correct factual findings do not enjoy support in the record."  Lomholt v.

Iowa, 327 F.3d 748 , 752 (8th Cir. 2003) (citing § 2254(e)(1), other citation omitted).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).  The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495, 1519-1520, 146  L.Ed.2d 389 (2000); Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citing Williams).  "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court  precedent.  Hawkins v. Alabama, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct. at 1850.

The law governing ineffective assistance of counsel claims was clearly established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984) and, in the context of a guilty plea, Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (applying Strickland).  Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520; Bell, 535 U.S. at 694-695, 122 S.Ct. at 1850.

Under the two part test of <u>Strickland</u>, Petitioner must demonstrate both deficient performance and prejudice to the outcome.

To establish deficient performance, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In reviewing the claim, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  Petitioner has a heavy burden to establish the deficient performance prong of <u>Strickland</u>, by showing that "no competent counsel would have taken the action that his counsel did take."  <u>Fugate v. Head</u>, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).

For prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694, 104 S.Ct. at 2068.  In the context of a guilty plea, the first part of the <u>Strickland</u> test is the same, but "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  <u>Hill v. Lockhart</u>, 474 U.S. at 59, 106 S.Ct. at 370; <u>Stano v. Dugger</u>, 921 F.2d 1125, 1150 (11th Cir.), *cert. denied*, 502 U.S. 835 (1991) (citing <u>Hill</u>, other citations omitted).

> [C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial.

Stano, 921 F.2d at 1151, *quoting* Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (other citation omitted).

Although Strickland explained the performance and prejudice prongs of analysis, "there is no reason . . . to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S.Ct. at 2069.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Id.*

If the state court identifies and applies the framework of Strickland in assessing an ineffective assistance claim, its adjudication does not satisfy the "contrary to" language of § 2254(d)(1) even if this court might have applied Strickland differently. Williams, 529 U.S. at 406, 120 S.Ct. at 1520; Bell, 535 U.S. at 698, 122 S.Ct. at 1852. To determine whether the state court's adjudication was an "unreasonable application" of Strickland, Petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance . . . .  Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner."  Bell, 535 U.S. at 698-699, 122 S.Ct. at 1852 (*citing* Williams).  "[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law."  Williams v. Taylor, 529 U.S. at 410, 120 S.Ct. at 1522.

**Ground One**

Petitioner contends that under Florida law, he could not be charged with forgery of his own checks.  He argues that forgery requires evidence of making a writing that falsely purports to be the writing of another.  Doc. 1, p. 4.  He contends he raised this claim in his Rule 3.850 motion.  Doc. 1, p. 4.

In his Rule 3.850 motion, Petitioner challenged only his forgery convictions in case number 2003-2606.  Doc. 11-2, p. 44; doc. 11-3, p. 1.[2]  He states that he filed a direct appeal, but that appeal was filed under the wrong case number 2003-3166.  Doc. 11-3, p. 1.  The only claim in the Rule 3.850 motion which relates in any way to the claim brought here is claim five, that Petitioner's attorney was ineffective for allowing the state to charge him with forging his own personal checks.  *Id.*, p. 2.  He contends that he asked to see the checks before he entered his nolo contendere plea, but no one would show him the checks.  *Id.*, p. 4.  He argues his attorney should have provided this in discovery.  *Id.*, p. 3.

The state court denied Petitioner's Rule 3.850 motion.  Doc. 11-3, pp. 18-21.  As to claim five, the court reasoned:

> The Defendant's fifth claim alleges counsel was ineffective by allowing the Defendant to be charged for offenses he did not commit.  This claim, as with Claim Three, attempts to challenge the State's evidence and offer a defense to the crimes.  By entering the plea in this case, the Defendant knowingly waived his right to challenge the evidence and to present any defense(s) to crimes charged.  The Defendant was aware of the alleged defense cited in this claim when he elected to enter into the plea agreement with the State.  Because the Defendant elected to a plea and forego a trial on the merits, he cannot use a motion for post-conviction relief to now challenge the evidence.  See <u>Parker v. State</u>, 603 So. 2d 616 (Fla. 1st DCA 1992).

_____

[2] Citations to document 11, which contains the state record, will be to the document number and page number as shown on the electronic docket.

*Id.*, p. 20.

Attached to Petitioner's Rule 3.850 motion is a probable cause affidavit.  Doc. 11-3, pp. 8-11.[3]  Handwritten on this copy is a notation that this pertains to case number 2003-CF-2606.  *Id.*, p. 8.  Ten checks are identified in this affidavit.  *Id.*  It is plain that the charges listed in the affidavit all arise from the same ten checks.  Five of the checks were for amounts over $150, and five were for less than $150, and these formed the basis for the charges of stopping payment on checks with intent to defraud, five counts as felonies and five counts as misdemeanors.  The same ten checks were charged as forgeries, ten counts, and uttering a forged instrument, ten counts.  *Id.*

The fraud was simple.  It is stated in the probable cause affidavit that Petitioner's sister said that Petitioner was addicted to crack cocaine and was stealing to support his addiction.  Doc. 11-3, p. 9.  On February 11, 2003, Petitioner reported to the police that someone other than himself was writing checks on his account at the Five Star Credit Union, and he suspected his wife, Vicki Bennett, as the person.  *Id.*  Vicki Bennett was not authorized to write checks on that account.  *Id.*  Petitioner alleged that his wallet was stolen from his truck, and said that his wife said that a friend of hers stole his check book and her identification.  *Id.*, p. 10.

On March 18, 2003, Petitioner signed a stop payment form with his credit union, asking that payment be stopped on check numbers 111 through 250.  *Id.*  All ten checks were passed after March 18, 2003.  *Id.*, pp. 9-10.  Check number 163 was passed at a Publix Supermarket on March 26, 2003, and the person cashing the check on the video

---

[3] A copy is also found at doc. 11-2, pp. 2-5.

surveillance camera appeared to be Petitioner, "a bald white male with a stocky build."

*Id.*, p. 10.  Petitioner was seen in the company of a white female who appeared to be

Vicki Bennett.  *Id.*  Check number 163 has written upon it the driver's license number of

Vicki Bennett.  *Id.*, p. 11.

On March 31, 2003, check number 182 was presented at that same Publix.  *Id.*,

p. 11.  The surveillance video revealed that the person presenting the check looked like

Petitioner.  *Id.*  He was alone.  *Id.*  However, the cashier viewed a driver's license when

this cash was negotiated, and the number written on the check was again that of Vicki

Bennett.  *Id.*

In summary, the evidence indicated that Petitioner himself stopped payment on

these particular checks and then made out the checks and passed them to a merchant

representing that the checks were still valid and would be honored.  FLA. STAT. § 831.01

provides:

> Whoever *falsely makes*, alters, forges or counterfeits a public record, or a
> certificate, return or attestation of any clerk or register of a court, public
> register, notary public, town clerk or any public officer, in relation to a
> matter wherein such certificate, return or attestation may be received as a
> legal proof; or a charter, deed, will, testament, bond, or writing obligatory,
> letter of attorney, policy of insurance, bill of lading, bill of exchange or
> promissory note, *or an order*, acquittance, or discharge *for money* or other
> property, or an acceptance of a bill of exchange or promissory note for the
> payment of money, or any receipt for money, goods or other property, or
> any passage ticket, pass or other evidence of transportation issued by a
> common carrier, *with intent to injure or defraud any person*, shall be guilty
> of a felony of the third degree, punishable as provided in s. 775.082, s.
> 775.083, or s. 775.084.

(Emphasis added).  A check drawn on a bank is an order for money within the meaning

of the forgery statute.  Minger v. State, 91 Fla. 79, 81, 107 So. 416, 416 (Fla. 1926).  "In

order to be the subject of forgery, the instrument forged must be upon its face, were it

genuine, of some apparent legal efficacy for injury to another . . . ."  <u>Hepburn v. Chapman</u>, 109 Fla. 133, 142, 149 So. 196, 199 (1933).

Petitioner contends that he could not be convicted for forgery because the writing he made and presented was a check from his own account.  Petitioner relies upon <u>Rushing v. State</u>, 684 So. 2d 856, 857 (Fla. 5th DCA 1996), *review denied*, 694 So. 2d 739 (1997), which stated:  "Under this statute, a conviction for forgery requires the making of a writing which falsely purports to be the writing of another."  Another case supportive of Petitioner's claim is <u>Walters v. State</u>, 245 So.2d 907, 908 (Fla. 1st DCA 1971).  In that case, the defendant was known in the community by a false name.  He had a banking account in the same false name, and wrote a check on that account using the false name.  The bank did not have sufficient funds to honor the check.  The court held that this did not constitute forgery as there was no intent to deceive using the false name.

There do not appear to be any Florida cases of forgery of a check squarely addressing the question presented here.  Petitioner's case differs from <u>Walters</u> in that not only was his account lacking funds to honor the checks, but he himself had stopped payment on the checks before writing and presenting them.  It could be reasonably argued that Petitioner "falsely made" these checks because he knew these were void checks when he made them due to his stop payment order.  It is one thing to make and present a check that is otherwise valid, knowing that the check is not backed by sufficient funds, and quite another to make and present a check as valid knowing that it is void *ab initio*, regardless of the existence of sufficient funds.  Thus, the law in Florida was not clear as to the forgery counts.

When Petitioner appeared in state court to enter a nolo contendere plea, Petitioner's attorney stated that Petitioner had a "bunch" of "grand theft check-type charges, forgeries, whatever."  Doc. 11-2, p. 9.  He said that Petitioner had the same type of charges pending in Quincy (Gadsden County), and he was set to enter a guilty plea in that case in exchange for a sentence of 27 months.  *Id.*  Petitioner's attorney said that Petitioner wanted to plead in the Leon County cases for a concurrent 27 month sentence.  *Id.*, p. 10.  Petitioner's attorney said that Petitioner's wife, Vicki Bennett, was a co-defendant and she "wrote most, if not all, of these checks."  *Id.*  He said that "she got a straight sentence, which was longer than twenty-seven months.  But, she had other charges."  *Id.*  He said that he sought a 27 month sentence with no probation for Petitioner.  *Id.*

Circuit Judge Kathleen Dekker said that she did not see a history of "money stuff where there's been probation and then a VOP," but she said that if Petitioner was not a good candidate for probation, she "would probably give him a long DOC sentence and wash [her] hands of him."  *Id.*, p. 13.  Petitioner immediately responded:  "I would like to settle it today.  I'm taking a lot [of] these checks and stuff that's not mine, but I know –" *Id.*  The court then said she had no problem with a 27 month sentence followed by probation "in order to pay back this money."  *Id.*  Defendant said he would "take a year's probation behind it," and asked for early termination if he paid the money back.  *Id.*, p. 14.

Petitioner then asked if he could get his discovery, and said he had asked for it five times.  *Id.*, p. 17.  He also wanted his sentencing scoresheet.  *Id.*  The prosecutor did not have two of the case files, and could not give Petitioner discovery then.  *Id.*

Petitioner's attorney asked Petitioner if he wanted him to "reset the plea for later and I will give you discovery," and Petitioner said "No sir, I want to go ahead and get it over with." *Id.*

A discussion ensued about how much restitution was due, and the court said that the prosecutor thought it was about $3,500. *Id.*, p. 18. Petitioner disagreed, and said: "My total figure of *what I know that I had – that I did was $2250.*" *Id.* (emphasis added). He then said, somewhat inconsistently, "the stopping payment with intent to defraud, that was my check that Vicki stole and wrote. I didn't stop – I closed the account when she stole my truck and my checks." *Id.* The court said that "*if you have a defense to any one or all charges* – we will talk about that, that that might be preserved for trial. And *if you plead to these, I'm going to consider that you did them –*" *Id.*, pp. 18-19 (emphasis added). Petitioner said: "Yes, I want to settle it." *Id.*, p. 19.

Later, Petitioner said he had not seen the discovery, and said he "would like to know if them checks with intent to defraud was my checks." Doc. 11-2, p. 20. Subsequently the following exchange took place:

> THE COURT:    *Do you understand that you may or may not have received discovery in each of these cases, there may or may not be motions that your attorney could make and might advise you to make if you had all the discovery or if you were able to review the case again*? Basically, you have indicated in court you would like to plead these out and get them done and I respect that. There's no law that says you can't do that. *I just need to understand for the record that you understand the risk that by pleading to all of this without more investigation may mean that you are overlooking or your attorney hasn't been able to evaluate properly a defense that you might have to any one or all counts? Do you understand that?*

THE DEFENDANT: Yes, ma'am.

THE COURT:         And there will be no further investigation.  Do you
                   understand that?

THE DEFENDANT: Yes, ma'am.

Doc. 11-2, pp. 28-29 (emphasis added).  Petitioner said that he understood that this

would "dispose of the case," and the only remaining issue would be restitution.  *Id.*, p.

29.  He said he signed the plea agreement after reading it and understanding it.  *Id.*, pp.

29-30.  Petitioner said that as long as the 27 month sentence was concurrent in all

cases, "that's fine."  *Id.*, p. 31.

It is plain from the plea colloquy above that Petitioner got exactly what he

bargained for, and was well aware that he might be giving up defenses to some of the

charges.[4]  The state circuit court so held as a finding of fact.  Further, Petitioner knew

before he entered his plea that he wrote these checks on his own bank account, or that

his wife did and he participated in it, and that he stopped payment on the checks *before*

they were written and presented.  He admitted that he was responsible for $2250 of the

---

[4] In a post-conviction challenge to a guilty plea:

[T]he representations of the defendant, his lawyer, and the prosecutor at
[the plea] hearing, as well as any findings made by the judge accepting
the plea, constitute a formidable barrier in any subsequent collateral
proceedings.  Solemn declarations in open court carry a strong
presumption of verity.  The subsequent presentation of conclusory
allegations unsupported by specifics is subject to summary dismissal, as
are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977)
(citations omitted); *see also* United States v. Gonzalez-Mercado, 808 F.2d 796, 799-800
and n. 8 (11th Cir. 1987) (while not insurmountable, there is a strong presumption that
statements made during a plea colloquy are true, citing Blackledge and other cases).

bad checks.  Petitioner's attorney offered to reschedule the plea, get the discovery, and discuss it with him, but Petitioner declined the offer and said he wanted to get it over with.  Petitioner was no novice before the court.  He knew about early termination of probation and concurrent sentences.  He had no concern about the number of convictions, but was only concerned about the length of the sentence and that it was concurrent with all other sentences.  Petitioner did not need discovery before he decided to enter a plea.

Petitioner's attorney was reasonably focused upon obtaining a favorable sentence, with a favorable restitution provision.  The State had video surveillance evidence of Petitioner himself cashing two of the checks after he had stopped payment on them, and his wife was with him on one occasion.  The bargain was very beneficial to Petitioner.  Petitioner faced ten counts of stopping payment upon the same checks with intent to defraud, in violation of FLA. STAT. § 832.041.  He knew he would get the same 27 month sentence as to those convictions, even if the forgery charges were dismissed.  He faced the same sentence in Gadsden County for other criminal offenses, and it was beneficial to him to have the Leon County sentence run concurrently.

Accordingly, Petitioner has failed to show either attorney error or prejudice to the outcome.  Thus, he has not shown that the state court's adjudication of the merits of this federal claim has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

**Grounds Two, Three, and Four**

Petitioner contends in ground two that he could not be charged with uttering a forgery of his own checks.  In ground three, he contends he cannot plead to an illegal sentence for a crime he did not commit.  In ground four, he contends he was forced to plead guilty to an illegal sentence by threat of "vindictive and enhancement penalties." These claims are a rehash of ground one and fail for the same reasons.

**Conclusion**

Accordingly, it is **RECOMMENDED** that 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Carl C. Bennett challenging convictions for forgery (10 counts) and uttering a forged instrument (10 counts) in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, case number 2003-2606, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on May 30, 2006.


**s/    William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**